IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____
ALEXANDER PENLEY,

     PLAINTIFF,       ECF CASE

 vs               AMENDED COMPLAINT

THE CITY OF NEW YORK, a municipal entity;  [JURY TRIAL DEMANDED]
NEW YORK CITY POLICE LIEUTENANT MICHAEL
CASEY; NEW YORK CITY POLICE SERGEANT  14 Civ. 1577 (JGK)
JOSE RODRIGUEZ, Shield No. 4920; NEW YORK CITY
POLICE DETECTIVE PAUL LAVIN, Shield No. 5827;
NEW YORK CITY POLICE OFFICER HARRIS
GOLDNER, Shield No. 730; NEW YORK CITY POLICE
OFFICER DOUGLAS SCHACK, Shield No., 30837; NEW
YORK CITY POLICE OFFICER RAYMOND LAYDEN,
Shield No. 28985; NEW YORK CITY POLICE
DETECTIVE TIMOTHY HINTEMAN, Shield No. 01480;
NEW YORK CITY POLICE SERGEANT ANDREW
LANE, Shield No. 00885, NEW YORK CITY POLICE
OFFICERS "JOHN DOES,"

     DEFENDANTS.
_____

  Plaintiff ALEXANDER PENLEY, by his attorneys, JEFFREY ROTHMAN, ESQ. and STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully alleges as follows:

### I. PRELIMINARY STATEMENT

  1.  Plaintiff ALEXANDER PENLEY bring this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States, including its First, Fourth, and Fourteenth Amendments.

  2.  Plaintiff ALEXANDER PENLEY filed a timely Notice of Claim with the Comptroller of the City of New York on February 7, 2013, within 90 days of the dismissal of the charges against him on

1

December 10, 2012 stemming from his arrest on June 12, 2012.  More than 30 days have elapsed since the filing of the Notice of Claim, and adjustment or payment thereof has been neglected or refused.

## II. JURISDICTION

3.	 This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

4.	Plaintiff ALEXANDER PENLEY further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

5.	Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

6.	Per F.R.C.P. 38(b), Plaintiff demands a trial by jury of all issues in this matter.

## V. THE PARTIES

7.	The Plaintiff ALEXANDER PENLEY is a resident of Oklahoma City, OK.

8.	Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public

consumers of the services provided by the New York City Police Department. That at all times hereinafter mentioned, the Defendant NEW YORK CITY POLICE LIEUTENANT MICHAEL CASEY, NEW YORK CITY POLICE SERGEANT JOSE RODRIGUEZ, NEW YORK CITY POLICE DETECTIVE PAUL LAVIN, NEW YORK CITY POLICE OFFICER HARRIS GOLDNER, NEW YORK CITY POLICE OFFICER DOUGLAS SCHACK, NEW YORK CITY POLICE OFFICER RAYMOND LAYDEN, Shield No. 28985; NEW YORK CITY POLICE DETECTIVE TIMOTHY HINTEMAN, Shield No. 01480; NEW YORK CITY POLICE SERGEANT ANDREW LANE, Shield No. 00885, and NEW YORK CITY POLICE OFFICERS "JOHN DOES" (Collectively, "Defendant Police Officers," individually, "Defendant Police Officer") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

9. Each and all of the acts of the Defendant Police Officers alleged herein were done by said Defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK, in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS

10. Plaintiff ALEXANDER PENLEY is an international lawyer who has volunteered his time to various socially-progressive causes, including but not limited to the Occupy Wall Street movement ("OWS"), as to which he has been a visible spokesperson in the press.

11. Wholly or partially because of his association with OWS, on or about the night of April 14-15, 2012, Plaintiff ALEXANDER PENLEY was falsely arrested and beaten outside of a political event by NYPD Intelligence Officers and Detectives, who falsely accused him of felony charges from a crime that had allegedly occurred elsewhere earlier in the evening

3

**12.**     At approximately midnight on the night of April 14-15, 2012, Plaintiff ALEXANDER PENLEY was lawfully present in front of the Sixth Street Community Center, located at 638 East Sixth Street, New York, New York.

**13.**     At that time, the Sixth Street Community Center was hosting a party in connection with New York's annual "Anarchist Book Fair" event.

**14.**     On information and belief, the "Anarchist Book Fair" is a popular event within New York's activist community.

**15.**     On information and belief, the 2012 Anarchist Book Fair was particularly well-attended due to the prominence of activism in New York at that time arising in some part from the OWS movement.

**16.**     While Plaintiff ALEXANDER PENLEY was outside of the Sixth Street Community Center, peacefully chatting with others, Defendants NEW YORK CITY POLICE DETECTIVE PAUL LAVIN and NEW YORK CITY POLICE LIEUTENANT CASEY - both members of the NYPD's Intelligence Division - and multiple other JOHN DOE Defendant Police Officers, on information and belief including Defendants NEW YORK CITY POLICE OFFICER RAYMOND LAYDEN, and NEW YORK CITY POLICE DETECTIVE TIMOTHY HINTEMAN (also a member of the NYPD's Intelligence Division); approached the Plaintiff ALEXANDER PENLEY and another individual outside of the Sixth Street Community Center.

**17.**     Without warning or apparent justification, the Defendant Police Officers then present seized and began to beat and assail Plaintiff ALEXANDER PENLEY and another individual.

**18.**     Plaintiff was struck by the Defendant Police Officers numerous times in the face, head, and body.

**19.** Plaintiff ALEXANDER PENLEY suffered pain and injuries as a result of Defendants' conduct.

**20.** After a time, the Defendant Police Officers then present arrested Plaintiff ALEXANDER PENLEY.

**21.** The Defendant Police Officers stated that Plaintiff ALEXANDER PENLEY was being arrested due to acts committed at a protest march earlier that evening.

**22.** Plaintiff ALEXANDER PENLEY was held at the NYPD 9th Precinct until approximately 3 or 4 a.m.

**23.** Plaintiff ALEXANDER PENLEY was then taken to Manhattan Central Booking, where he was held until his arraignment at approximately 9 p.m. on the night of April 15, 2012, at which time he was released on his own recognizance.

**24.** A Felony Criminal Court Complaint dated April 15, 2012 - charging Plaintiff with Assault in the Second Degree, Resisting Arrest, Obstruction of Governmental Administration in the Second Degree, and Criminal Possession of a Weapon in the Fourth Degree, and signed by Defendant SCHACK - was lodged against Plaintiff. It attests that Defendant SCHACK is informed by Defendant CASEY that on April 14, 2012, in front of 13 Astor Place, Defendant CASEY observed Plaintiff and another individual push police officers with a large metal pipe. It also attests the Defendant SCHACK is informed by Defendant RODRIGUEZ – also a member of the NYPD's Intelligence Division – that Plaintiff and another individual struck Defendant RODRIGUEZ in the hand with the metal pipe.

25. These allegations against Plaintiff are entirely false. Plaintiff played no part whatsoever in any physical confrontations with any police officers attested to in the Criminal Court Complaint as having occurred at Astor Place.

26. In the April 15, 2012 Criminal Court Complaint, Defendant CASEY and Defendant LAVIN also falsely claimed that Plaintiff ALEXANDER PENLEY struggled and resisted arrest. This assertion is also false, as Plaintiff was, as described above, assailed and beaten by the arresting police officers without warning or justification at the time of his arrest, as has been memorialized by other individuals present at that time. *See, e.g.*, Seth Tobocman and Jessica Wehrle, "What I Saw: Cartoonist Seth Tobocman's Eyewitness Account of Police Raid," The Villager, April 19, 2012, incorporated herein by reference and available online at http://thevillager.com/2012/04/19/what-i-saw/.

27. Plaintiff ALEXANDER PENLEY attended multiple court appearances and otherwise satisfied all conditions of his release pending trial.

28. On or about October 19, 2012, a grand jury voted to dismiss all charges against Plaintiff ALEXANDER PENLEY stemming from the April 14-15 arrest.

29. On that date, all charges stemming from the April 14-15, 2012 incident were dismissed and sealed.

30. On June 12, 2012, Plaintiff ALEXANDER PENLEY was trying to get into his apartment in upper Manhattan, from which he found himself locked out.

31. Defendant POLICE OFFICERS, including Defendant GOLDNER and, on information and belief, Defendant LANE, who arrived at the scene were initially helpful, but proceeded to arrest

Plaintiff ALEXANDER PENLEY and falsely charge him on a Felony Criminal Court Complaint with Criminal Mischief in the Third Degree for allegedly destroying a door.

32. The Criminal Court Complaint attests that Defendant GOLDNER was informed by another unnamed individual that Plaintiff had repeatedly struck and kicked the door, and that the door had splintered and would no longer open or close.

33. The door, which was made of metal, was obviously not damaged in the manner described in the criminal court complaint, however, which fact was plainly visible to the arresting officers.

34. Plaintiff was wearing sandals on June 12, 2012.

35. When he was arrested on June 12, 2012, the Defendant POLICE OFFICERS told Plaintiff that they would otherwise have given him a summons and not subjected him to a custodial arrest, but the decision to arrest and prosecute Plaintiff ALEXANDER PENLEY was made after calling in his identification and hearing about the then-pending charges from the April 14-15, 2012 arrest.

36. Plaintiff was held in custody for approximately 24 hours following his arrest on June 12, 2012, and was released on his own recognizance at arraignment.

37. Plaintiff ALEXANDER PENLEY attended multiple court appearances and otherwise satisfied all conditions of his release pending trial.

38. On or about December 10, 2012, a grand jury voted to dismiss all charges against Plaintiff ALEXANDER PENLEY stemming from his June 12, 2012 arrest.

39. On that date, all charges stemming from the June 12, 2012 incident were dismissed and sealed.  Nevertheless, on or about January 11, 2013, when Plaintiff ALEXANDER PENLEY was working in Virginia, he was arrested on a warrant issued in alleged relation to the June 12, 2012 incident.

**40.** Plaintiff was held for approximately 5 days in jail in Virginia on the bogus warrant, and for an additional approximately 10 days was prohibited from leaving Virginia.

**41.** Plaintiff's family had to provide $50,000 in collateral to a bail bondsman in Virginia to secure his release, $5,000 of which was the bail bondsman's fee and was never returned.

**42.** On or about January 28, 2013, the bogus warrant in question was vacated.

**43.** At or around the same time as these instances, the NYPD and the NYPD Intelligence Division engaged in and procured other questionable and apparently retaliatory applications of legal process against persons identified as OWS activists.

**44.** For example, on or about the early morning of May 1, 2012, activist Shawn Schrader was arrested by members of the NYPD's Intelligence Division on a several-year-old public urination warrant against another individual whose legal name matched the name Mr. Schrader had used for his press activities in connection with the OWS movement, "Shawn Carrie," in an effort to prevent Mr. Schrader from participating in planned and announced May 1, 2012 protest activities. Members of the NYPD Intelligence Division arrested Mr. Schrader - and, on information and belief, other activists associated with OWS - on a pretense to prevent them from engaging in First Amendment protected activities. *See*, Schrader v. City of New York, et al., 13 Civ. 1995 (HB).

**45.** Throughout 2012, it has also been shown that the NYPD Intelligence Division had undercover officers assigned to infiltrate OWS events and meetings, and at least one of said undercover officers infiltrating OWS planning meetings advocated for the use of disruptive and illegal tactics that would justify the arrests of protestors. See Adrian Chen, "Undercover Cop in SUV Brawl Spied on Occupiers at Birthday Parties," Gawker, October 9, 2013, incorporated by reference herein and available online at http://gawker.com/undercover-cop-in-suv-brawl-spied-on-

8

occupiers-at-birth-1443172651. ([in meetings to plan for the 1 year anniversary of OWS in 2012 the undercover officer] "… said his opinion of what we should be doing on the first anniversary was to be more out on the street and blocking more traffic.")

## **FIRST CLAIM**

### **DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

**46.** The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

**47.** By their conduct and actions in seizing plaintiff, searching plaintiff, depriving plaintiff of his property, falsely arresting and imprisoning plaintiff, assaulting and battering plaintiff, trespassing upon plaintiff, maliciously prosecuting plaintiff, abusing process against plaintiff, violating rights to due process of plaintiff, violating and retaliating for plaintiff's exercise of his rights to free speech and association, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment they received at the hands of other defendants, defendants CASEY, RODRIGUEZ, LAVIN, GOLDNER, SCHACK, LAYDEN, HINTEMAN, LANE, and "JOHN DOES", acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

48. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

49. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

50. By their conduct in failing to remedy the wrongs committed by their subordinates and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants CASEY, RODRIGUEZ, LAVIN, HINTEMAN, LANE, and JOHN DOES caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, and Fourteenth amendments.

51. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS

52. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

53. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had de facto policies,

practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

54. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

55. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had de facto policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free speech and association in a manner that affronts police officers or is interpreted by police officers as challenging their authority or documenting or reporting their misconduct. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

56. At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence." Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

**57.** At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the individual defendants, had de facto policies, practices, customs and/or usages of engaging in unconstitutional false arrests and related malicious prosecutions and abuses of process, and in unconstitutional, violent, and overly aggressive actions toward individuals perceived as being affiliated with the Occupy Wall Street movement. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

**58.** The aforementioned customs, practices or tacitly condoned policies of the NYPD were contributing factors to the incidents detailed above:

a. The continuing practice or custom of condoning the NYPD and NYPD Intelligence Division's use of retaliatory, pretextual and unfounded criminal charges and excessive force against persons engaged in First Amendment protected speech and expressive association;

b. The continuing practice or custom of wrongfully arresting individuals engaged in first amendment protected expression and association, both generally and relating to Occupy Wall Street, without probable cause in attempts to justify content-based retaliatory acts against same (i.e. retaliatory "cover charge" arrests);

c. the continuing practice of failing to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers engaged in the excessive use of force or in warrantless or otherwise unconstitutional arrests or otherwise impermissible violations of individuals' constitutional rights, particularly with respect to officers who are

      repeatedly accused of such acts, as shown in *Floyd et al. v. City of New York et al.*, SDNY No. 08 Civ. 1034(SAS), among other cases; and

  d.  the pervasive failure to supervise, train, instruct and discipline police officers with respect to the constitutional rights of citizens, and encouraging the ensuing misconduct through condoning officers' widespread custom or practice known as the "Blue Wall of Silence," wherein officers deliberately frustrate official and departmental oversight by discouraging officers from reporting corrupt or unlawful acts of other police officers, and by retaliating against officers who report police misconduct (condoning pervasive constitutional violations and concomitant "Blue Wall of Silence" coverups of same).

57. The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the use of excessive force, unlawful detention, interference with protected First Amendment activity, retaliatory use of force, abuse of process and deprivation of liberty without due process of law against individuals apparently associated with Occupy Wall Street while engaged in protected First Amendment activity, are further evidenced, *inter alia*, by the hundreds of incidents involving questionable arrests and uses of force by NYPD officers against OWS protestors documented in the press and compiled by The Global Justice Clinic at the New York University School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School in their publication entitled "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street," published July 25, 2012, *available online at*

http://www.documentcloud.org/documents/403969-suppressing-protest.html (last visited March 6, 2014).

58. The pervasive NYPD custom, policy or practice of wrongfully arresting individuals engaged in First Amendment expression and expressive association, both generally and also particularly with respect to Occupy Wall Street, can also be shown with reference to the case of *Rodriguez et al. v. Winski et al.*, SDNY 12cv3389 (NRB) (National Press Photographers' Association and others complain of systematic suppression of press and public official observation of policing of Occupy Wall Street; Plaintiff Peter Dutro arrested and falsely accused of interfering with arrest for commenting upon arrest, vindicated by surveillance video contradicting police account of arrest; Plaintiff Justin Wedes arrested for live-streaming police-protester interactions at protest, etc.).

59. That the Defendant CITY OF NEW YORK has been on continuing notice that officers and commanders of the New York City Police Department tolerate and encourage police to lie to cover up the wrongful conduct of themselves and their fellow officers can be shown with reference to the following cases:

   a. *Ariza v. City of New York*, 1996 U.S. Dist. LEXIS 20250, 14 (E.D.N.Y. March 7, 1996) ["The [municipal] defendants concede, however, that the code exists to prevent other officers from reporting corruption or dishonesty by fellow officers…. [t]he principle behind the 'blue wall of silence' is that officers will suffer recrimination for breaking ranks and subjecting police conduct to public scrutiny."]

b. *White-Ruiz v. City of New York*, 1996 U.S. Dist. LEXIS 15571, 23 (S.D.N.Y. October 21, 1996) ["[P]laintiff offers sufficient evidence to permit a reasonable trier of fact to infer that the 'blue wall of silence' constitutes a custom or usage of the Department"]

c. *United States v. Rosario*, 237 F. Supp. 2d 242, 248 (E.D.N.Y. 2002) ["[Assistant U.S. Attorney] Palmer testified that while supervising the federal investigation into the Louima assault, she routinely confronted a 'blue wall of silence' erected by police officers and PBA officials intent on obstructing efforts to uncover the full truth about what had happened at the 70th precinct on August 9, 1997."]

d. *Barry v. New York City Police Dep't*, 2004 U.S. Dist. LEXIS 5951, 40-41 (S.D.N.Y. April 7, 2004) ["[P]laintiff's witnesses speak from firsthand experience about the blue wall of silence…. Plaintiff complains of acts that are of the precise nature as the customs and practices described in the [Mollen Commission] Report."

e. *Griffin v. City of New York et al.*, 10-CV-01824 (E.D.N.Y. 2010) [Plaintiff detective sues on pattern of retaliation following his reporting fellow detective to Internal Affairs, fellow officers cover for detective accused of misconduct, see, e.g., at ¶35: "Internal Affairs conducted its investigation into [Detective] Plaintiff's allegations [of misconduct] against [Detective] McCarthy. All of the material witnesses failed to cooperate with the investigation by being less than truthful…. [a]s a result, the allegations made by Plaintiff against McCarthy were dismissed as unsubstantiated."]

60. Upon information and belief, the above-referred constitutionally violative policies, practices and customs remain widespread, open, and notorious throughout the NYPD to date.

61. Upon information and belief, the policymakers of the NYPD and Defendant CITY OF NEW YORK are aware that these practices and customs of NYPD officers continue to date, and have failed to take adequate steps to curb these practices and customs, which regularly cause the violation of individuals' Constitutional rights.

62. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

63. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

64. The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of the defendant THE CITY OF NEW YORK, and, as a result, the defendant THE CITY OF NEW YORK is liable to the plaintiff pursuant to the state common law doctrine of respondeat superior.

65. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

## **FIFTH CLAIM**

### MALICIOUS PROSECUTION

66. The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

67. By the actions described above, defendants maliciously prosecuted plaintiff without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

68. As a result of the foregoing, plaintiff was deprived of his liberty and property, experienced injury, pain and suffering, emotional injury, costs and expenses, and was otherwise damaged and injured.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorneys' fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:  New York, New York
        October 31, 2014

                                        Respectfully submitted,

                                        _____/S/_____
                                        JEFFREY A. ROTHMAN, Esq.
                                        315 Broadway, Suite 200
                                        New York, New York 10007
                                        Tel.: (212) 227-2980; Fax: (212) 591-6343
                                        rothman.jeffrey@gmail.com

                                        SAMUEL B. COHEN
                                        STECKLOW COHEN & THOMPSON
                                        10 SPRING STREET – SUITE 1
                                        New York, New York 10012
                                        [212] 566-8000
                                        [212] 202-4952/FAX
                                        SAM@WYLIELAW.COM

                                        ATTORNEYS FOR PLAINTIFF